1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RAINES,<br><br>                                          Petitioner,<br><br>vs.<br><br>DR. JEFFREY BEARD, Secretary,<br><br>                                          Respondent. | CASE NO. 14-CV-2961-H (PCL)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On December 2, 2014, Petitioner Christopher Raines ("Petitioner"), a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  On February 27, 2015, Respondent filed a response to the petition.  (Doc. No. 14-1.)  On March 23, 2015, Petitioner filed a traverse.  (Doc. No. 16.)  On April 21, 2015, the magistrate judge issued a report and recommendation to deny the petition for writ of habeas corpus.  (Doc. No. 17.)   After careful consideration, the Court denies the petition for writ of habeas corpus.

## Background

### I.      Factual History

The Court adopts the facts from the California Court of Appeal opinion denying Petitioner's direct appeal and affirming his conviction.  (See Doc. No. 14-12 at 4-7.)

This Court, pursuant to 28 U.S.C. § 2254(e)(1), presumes the following facts to be correct:

[Petitioner] was caring for a 22–month–old girl (the Child) on October 17, while her mother (the Mother) was at work. While [Petitioner], the Child suffered a serious injury to her genital area caused by blunt force trauma consistent with the forcible insertion of a penis or other object into the Child's vagina. The injury consisted of a jagged rip of approximately 1.5 centimeters in the Child's perineum, between her vagina and anus. There were also injuries to the Child's internal vaginal structures, and the Child's hymen was broken and torn away. The injury caused a large amount of bleeding that soaked the Child's diapers. A pediatrician who specializes in child abuse later examined the Child and determined that the injury did not appear to be the result of an accident, and the insertion of fingers into the Child's vagina would not have caused such an extensive injury.

Deciding that the injury required medical attention, [Petitioner] drove to meet the Mother at her workplace to pick up the Child's medical insurance card before driving to the hospital. On the way to the hospital, [Petitioner] told the Mother that the injury occurred while he and the Child were in the shower and the Child slipped out of his arms. After examining the Child, an emergency room doctor suspected sexual abuse and notified the police.

Police officers spoke to [Petitioner] at the hospital. [Petitioner] initially told them that while he was taking a shower with the Child, she slipped out of his arms and he grabbed her while she was falling, which may have caused her injuries. When a police officer told [Petitioner] that, according to the doctor, the Child's injuries were not consistent with a slip in the shower, [Petitioner] put his head down and said, "My life is over." After being silent with his head down for several minutes, [Petitioner] stated that the Child did not slip in the shower. [Petitioner] explained that, instead, the Child was injured when he was changing her diaper on the bed. According to [Petitioner], the Child was falling off the bed when he grabbed her to stop her fall, possibly causing his finger to penetrate her "butt."

The Child was transferred to Children's Hospital, where she underwent surgery to repair her injuries.

While [Petitioner] was at Children's Hospital with the Child, he was interviewed by police detectives in a private room. The interview, which was recorded, commenced shortly before midnight on October 17 and did not end until 1:47 a.m. on October 18. Near the beginning of the interview, [Petitioner] was informed of his Miranda rights and agreed to speak to the detectives. [Petitioner] repeated the claim that the Child was injured when he was changing her diapers and he grabbed her as she fell off the bed. He stated that he originally claimed the injury happened in the shower because he was "in panic mode" when he first got to the hospital. He denied touching the Child with his penis.

14cv2961

Early in the morning on October 18, [Petitioner] was taken to the police department where a nurse performed a sexual assault examination on [Petitioner], including taking swabs from [Petitioner]'s penis and scrotum. A subsequent DNA analysis of a bloody swab from [Petitioner]'s penis showed the Child as a possible contributor of some of the DNA on the swab.

Around 8:00 a.m. on October 18, a police interviewer and a police detective questioned [Petitioner] at the police station in a recorded interview [the October 18 interview]. During the [October 18] interview, [Petitioner] initially maintained his prior claim that he must have accidentally injured the Child when she fell from the bed during a diaper change. However, near the end of the interview, [Petitioner] stated that he intentionally inserted two fingers into the Child's vagina to restrain the Child when he lost his temper due to the difficulty of changing the Child's diaper while she was moving around. At the conclusion of the interview, the police detective arrested [Petitioner].

A search of the home where [Petitioner] was caring for the Child revealed—among other things—a blood stain on the mattress where the Child's diaper was changed, a bloody sheet from that bed that [Petitioner] admitted putting in the outside trash can before going to the hospital with the Child, and blood stains on the floor of the bedroom.

[Petitioner] was charged with one count of committing a lewd act upon a child under the age of 14 (§ 288, subd. (a)), with the further allegation for sentencing purposes under section 288, subdivision (i)(1) that he personally inflicted bodily harm, and further allegations for sentencing purposes under the One Strike law that he personally inflicted bodily harm on a victim under 14 years of age and personally inflicted great bodily injury (§ 667.61, subds.(a), (c), (d)(6) & (7)). [Petitioner] was also charged with one count of felony child abuse (§ 273a, subd. (a)).

At trial, two of [Petitioner]'s female relatives (Girl No. 1 and Girl No. 2), who were both 17 years old at the time of trial, testified that they were sexually molested by [Petitioner] when they were approximately three and four years old and [Petitioner] was an adult.

Girl No. 1 testified that when she was approximately three years old, [Petitioner] walked into the room, exposed his penis to her, and asked whether she wanted to touch it and whether he could touch her. She poked at [Petitioner]'s penis and then ran out of the room after he tried to touch her crotch. According to Girl No. 1, she disclosed the incident to her parents shortly after it occurred. Girl No. 1's mother testified at trial that she learned of the incident shortly after it happened but decided not to take any action against [Petitioner] after she spoke with him and he contended it was a misunderstanding.

Girl No. 2 testified that when she was approximately four years old [Petitioner] came into her bedroom and asked her if she would touch his body parts and have sex with him. She did not understand the question and said "Yes." [Petitioner] pulled down his pants and got on top of her. It hurt her and she said "Ow," after which [Petitioner] stopped and left the room. Girl No. 2 remembered bleeding from her vagina onto her legs. According to the testimony of Girl No. 2 and of her mother, Girl No. 2

1   disclosed the molestation to her mother when she was approximately 13
2   years old, at which time her mother did not take any action against
    [Petitioner].

3          The jury found [Petitioner] guilty on both counts and further found
    the bodily injury allegations to be true. The trial court sentenced
4   [Petitioner] to prison for a term of 25 years to life.

## II.   Procedural History

On February 27, 2013, Petitioner appealed his conviction to the California Court of Appeal. (Doc. No. 14-10.) Petitioner challenged the constitutionality of California Evidence Code § 1108, the provision allowing the admission of prior uncharged sexual offenses in sexual offense cases. (Id.) Petitioner further claimed that his trial counsel was ineffective and that the trial court erred by allowing into evidence Petitioner's October 18 interview and evidence of Petitioner's prior sexual offenses against his female relatives. (Id.) On October 30, 2013, the court affirmed the conviction in a reasoned opinion. (Doc. No. 14-12.) On January 15, 2014, the California Supreme Court denied Petitioner's petition for review of the Court of Appeal's decision. (Doc. No. 14-14.)

On August 14, 2013, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal. (Doc. No. 14-15.) Petitioner argued that his trial counsel was ineffective for failing to present mitigating evidence, failing to investigate other evidence identified by Petitioner, and refusing to let Petitioner testify at trial. (Id. at 3.) On August 26, 2013, the court denied Petitioner's habeas petition, concluding that he had not shown his counsel was ineffective. (Doc. No. 14-16.)

On October 31, 2013, Petitioner filed a second petition for writ of habeas corpus with the California Court of Appeal. (Doc. No. 14-17.) Petitioner raised the same grounds for relief as in his prior state habeas petition and also contended that his trial counsel was ineffective for failing to call additional witnesses favorable to the defense. (Id.) On November 8, 2013, the court denied the petition as procedurally barred, concluding that it was repetitive and successive. (Doc. No. 14-18.)

On June 6, 2014, Petitioner filed a third habeas petition with the California Court of Appeal. (Doc. No. 14-19.)  Petitioner repeated the arguments from his prior habeas petitions and from his direct appeal.  (Id.)  On June 25, 2014, the court denied the petition as repetitive and successive.  (Doc. No. 14-20.)

On July 28, 2014, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court, raising the same arguments from his prior petition.  (Doc. No. 14-21.)  On October 1, 2014, the California Supreme Court summarily denied the petition.  (Doc. No. 14-22.)

On December 2, 2014, Petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner asserts that the trial court erred by allowing into evidence Petitioner's October 18 interview and evidence of his prior sexual offences against his young female relatives.  (Id. at 5.)  Petitioner further contends that his trial counsel was ineffective for failing to object to admission of the October 18 interview, failing to present mitigating evidence, failing to call additional witnesses, and refusing to let Petitioner testify at trial.  (Id.)

## Discussion

### I.   Legal Standards

#### A.   Habeas Corpus

A federal court may review a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Habeas corpus is an "extraordinary remedy" available only to those "persons whom society has grievously wronged . . . ." Juan H. v. Allen, 408 F.3d 1262, 1270 (9th Cir. 2005) (quoting Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993)).  Because Petitioner filed this petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the petition.  See Lindh v. Murphy, 521 U.S. 320, 327 (1997); Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).  "When a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. Federal habeas relief is available only if the result reached by the state court on the merits is "contrary to," or "an unreasonable application" of United States Supreme Court precedent, or if the adjudication is "an unreasonable determination" based on the facts and evidence. 28 U.S.C. § 2254(d)(1)-(2).

A federal court may grant habeas relief under the "contrary to" clause of § 2254(d)(1) if a state court either "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Early v. Packer, 537 U.S. 3, 8 (2002); see also Williams, 529 U.S. at 405-06 (distinguishing the "contrary to" and the "unreasonable application" standards). "[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

A federal court may grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407. A federal court may also grant habeas relief "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. The state court's "unreasonable application" of binding precedent must be objectively unreasonable to the extent that the state court decision is more than merely incorrect or erroneous. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citation omitted); see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).

Additionally, even if a state court decision is "contrary to" United States

Supreme Court precedent or rests on an "unreasonable determination" of facts in light of the evidence, the petitioner must show that such error caused substantial or injurious prejudice. Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht, 507 U.S. at 637-38). AEDPA creates a highly deferential standard toward state court rulings. Woodford v. Viscotti, 537 U.S. 19, 24 (2002).

In determining whether a state court decision is contrary to clearly established federal law, the district court looks to the state's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where there is an unexplained decision from the state's highest court, the district court "looks through" to the last reasoned state judgment and presumes that the unexplained opinion rests upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to any portion of the magistrate's report, the district court reviews de novo those portions of the report. Id.

### B.    Ineffective Assistance of Counsel

In criminal prosecutions, the Sixth Amendment guarantees assistance of counsel to the accused. Strickland v. Washington, 466 U.S. 668, 685 (1984). To establish that counsel was ineffective, the person challenging the conviction must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687.

To establish that counsel's assistance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. When considering a claim of ineffective assistance of counsel, a reviewing court must be highly deferential to counsel's performance. Id. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. A

14cv2961

petitioner is tasked with the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To show that the defense was prejudiced, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner has not established prejudice if she has only shown that counsel's errors had "some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's unprofessional errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

When a court examines counsel's effectiveness de novo, Strickland's two-part analysis is applied and the court must accord counsel's actions deference. Harrington v. Richter, 562 U.S. 86, 105 (2011). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 357 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington, 562 U.S. at 105. Because Strickland and § 2254(d) both establish "highly deferential" standards of review, review is "doubly" deferential when the two apply together. Id. When a state court has adjudicated an ineffective assistance of counsel claim on the merits, a federal court examining a § 2254 petition renewing the ineffective assistance claim "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. A § 2254 habeas corpus claim may be presumed to have been adjudicated on the merits if it was presented to a state court, and the court denied relief. Id. at 100.

When reviewing the state court's adjudication of a petitioner's § 2254 ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Id. at 101. The state court's application of Strickland was not unreasonable if "there is any reasonable argument

that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u> at 105.  Thus, to establish that the state court's denial of his ineffective assistance claim was contrary to federal law or unreasonably applied <u>Strickland</u>'s ineffective assistance of counsel standard, Petitioner must show that there is no reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.  <u>See</u> <u>Harrington</u>, 562 U.S. at 105.

## II.    Analysis

### A.    Petitioner Has Not Established That Counsel Was Ineffective

Petitioner asserts that his trial counsel was ineffective for failing to interview and call several people to testify as witnesses, not allowing Petitioner to testify in his own defense, not introducing Petitioner's psychological examination and evidence about Petitioner's childhood, and not objecting to the admission of Petitioner's statements to police in the October 18 interview.  (Doc. No. 1-1 at 7-15.)

#### 1.    Additional Witnesses

Petitioner asserts that his trial counsel was ineffective for failing to interview and call several people to testify as witnesses.  (Doc. No. 1-1 at 12.)  Petitioner contends that his mother, father, step-mother, and step-father, if called at trial, would have testified that Petitioner did not abuse Girl 1 or Girl 2.  (<u>Id.</u> at 13.)  But Petitioner has not presented any evidence that the identified witnesses were willing and available to testify at trial or that they would have testified in the way Petitioner claims they would have testified.  <u>See</u> <u>Dows v. Wood</u>, 211 F.3d 480, 486-87 (2000) (no ineffective assistance of counsel for failure to call witnesses where petitioner did not provide evidence that the witness would testify or present an affidavit from the alleged witness as to his testimony); <u>Grisby v. Blodgett</u>, 130 F.3d 365, 373 (9th Cir. 1997) (self-serving affidavit not sufficient to demonstrate ineffective assistance where there is no affidavit presented from the alleged witness); <u>United States v. Harden</u>, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance due to counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would actually testify at trial).  Thus, Petitioner has not established that his trial counsel's

performance was constitutionally deficient.  Strickland, 466 U.S. at 667-68.

Moreover, Petitioner does not claim that his mother, father, step-mother, or step-father would have testified that Petitioner did not commit the crime for which he was tried and convicted.  He only contends that their testimony would have rebutted the evidence of prior misconduct against Girls 1 and 2. (See Doc. No. 1-1 at 13.)  In light of his inculpatory and inconsistent statements to police, the extent and type of injuries to the Child, the DNA evidence showing that the Child was a possible contributor to DNA found on Petitioner's genitals, and testimony from a doctor trained in sexual assault injuries that the Child's injuries were consistent with injuries caused by a penis and inconsistent with injuries caused by accident or by fingers, Petitioner has not shown how the testimony from his relatives regarding abuse against Girls 1 and 2 would have undermined confidence in the jury's verdict.  Strickland, 466 U.S. at 694; (Doc. No. 14-7 at 85-90, 92-93).

## 2.     Petitioner's Testimony At Trial

Petitioner also contends that his trial counsel was ineffective for failing to allow Petitioner to testify in his own defense.  (Doc. No. 1-1 at 13.)  A criminal defendant "has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987); Gill v. Ayers, 342 F.3d 911, 919 (9th Cir. 2003). But, a criminal defendant may waive the right to testify either explicitly or implicitly. United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999).  A court may infer waiver from a defendant's failure to testify at trial or to notify the trial court of his desire to testify.  See id. at 1094-1095.  A trial court "has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred."  United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993) (citation and internal quotation marks omitted).  Rather, "waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so."  Id. (citation omitted). "When a defendant remains silent in the face of his attorney's decision not to call him

as a witness, he waives the right to testify" and cannot later claim ineffective assistance of counsel due to his counsel's failure to call him as a witness. <u>Pino-Noriega</u>, 189 F.3d at 1095; <u>United States v. Nohara</u>, 3 F.3d 1239, 1244 (9th Cir. 1993). Additionally, a criminal defendant in California court "must timely and adequately assert his right to testify." <u>People v. Hayes</u>, 229 Cal. App. 3d 1226, 1231 (1991) ("Without such an assertion, a trial judge may safely assume that a defendant who is ably represented and who does not testify is merely exercising his Fifth Amendment privilege against self-incrimination and is abiding by his counsel's trial strategy.").

Here, Petitioner has not provided any evidence that he notified the trial court of his desire to testify and a review of the record does not disclose any notification. By failing to notify the trial court of his intention to testify, Petitioner waived his right to testify in his defense at trial. <u>Pino-Noriega</u>, 189 F.3d at 1094-95; <u>see</u> <u>Hayes</u>, 229 Cal. App. 3d at 1231-32 ("When the record fails to show such a demand, a defendant may not await the outcome of the trial and then seek reversal based on his claim that despite expressing to his counsel his desire to testify, he was deprived of that opportunity.").

Further, Petitioner has not shown that his testimony would have undermined confidence in the jury's verdict. <u>Strickland</u>, 466 U.S. at 694. Petitioner claims he would have testified that while he was changing the Child's diaper, he inadvertently injured the Child when he grabbed her as she was crawling toward the edge of the bed. (Doc. No. 1-1 at 14.) But this explanation would have presented the jury with two different accounts of Petitioner's conduct because it is inconsistent with Petitioner's trial position that he intentionally injured the child with his fingers out of anger and frustration. (<u>See</u> 14-12 at 11.) Accordingly, Petitioner has not established that his failure to testify and present the jury with his current explanation undermines confidence in the jury's verdict. <u>Strickland</u>, 466 U.S. at 694.

### 3.    Petitioner's Psychological Examination

Petitioner also asserts that his trial counsel was ineffective for failing to introduce Petitioner's psychological examination and evidence about Petitioner's

childhood at trial. (Doc. No. 1-1 at 7-12.) Petitioner argues that the psychological examination and evidence of childhood abuse could have persuaded the jury that he harmed the child because he was angry and impulsive, not for a sexual purpose. (Id.)

In the last reasoned state judgment on this issue, the Court of Appeal found that Petitioner had failed to demonstrate counsel was ineffective for failing to present evidence of Petitioner's psychological evaluation and evidence about Petitioner's childhood because Petitioner did "not demonstrate how this evidence, which does not . . . concern whether or not Raines committed the crime, would have been admissible at trial." (Doc. No. 14-16 at 2); see Nunnemaker, 501 U.S. at 801-06. Here, Petitioner has done no more than he did at the Court of Appeal to "demonstrate how this evidence . . . would have been admissible at trial." (Compare Doc. No. 1-1 at 7-12 with 14-15 at 25-27.) Moreover, Petitioner has not established that admitting his psychological evaluation and evidence of his childhood abuse undermines confidence in the jury's verdict. Strickland, 466 U.S. at 694. At trial, the jury was presented with, among other evidence, Petitioner's inculpatory and inconsistent statements to police, evidence of the extent and type of injuries to the Child, DNA evidence showing that the Child was a possible contributor to DNA found on Petitioner's genitals, Girl 1 and Girl 2's testimony that Petitioner sexually abused them when they were young, and testimony from a doctor trained in sexual assault injuries that the Child's injuries were consistent with injuries caused by a penis and inconsistent with injuries caused by accident or by fingers. (Doc. No. 14-7 at 85-89, 92-93.)

### 4.    Objection to Police Interview Statements

Petitioner further contends that his trial counsel was ineffective for failing to object to the admission of Petitioner's statements to police on October 18, 2010.

On October 17, 2010, shortly before midnight, two detectives interviewed defendant in a private room at Children's Hospital. (Doc. Nos. 14-12 at 5; 14-3 at 58-114.) Before questioning Petitioner about the events involving the child, one of the detectives advised Petitioner of his Miranda rights. (Doc. Nos. 14-12 at 5; 14-3 at 66.)

Petitioner stated that he understood his rights and agreed to speak to the detectives. (Doc. Nos. 14-12 at 5; 14-3 at 66.)  Petitioner told the detectives that he accidentally injured the child when he grabbed her as she fell off the bed.  (Doc. No. 14-12 at 5.) Petitioner acknowledged that he initially lied to the police about injuring the child in the shower. (Doc. No. 14-12 at 5.)  Petitioner's interview concluded at approximately 1:50 a.m.  (Doc. No. 14-3 at 114.)  After the interview, Petitioner was taken to the police department where a nurse performed a sexual assault examination on Petitioner. (Doc. No. 14-12 at 5.)

At approximately 8:00 a.m. on October 18, 2010, Petitioner returned to the police station where he agreed to take a polygraph examination.  (Doc. Nos. 14-12 at 6; 1 at 23.)  At the police station, a police interviewer and one of the detectives from the prior interview questioned Petitioner.  (Doc. No. 14-3 at 115.)   During the interview, Petitioner told police that he lost his temper with the child and inserted two fingers into the child's vagina to hold the child down.  (Doc. No. 14-12 at 6.) Petitioner now contends that on October 18, unlike the night before, the police did not warn Petitioner of his Miranda rights. (Doc. No. 1 at 23.) At trial, Petitioner's attorney did not object to the admission of the statements from Petitioner's October 18, 2010 police interview.  (Doc. No. 14-12 at 8-9.)

In the last reasoned state judgment on this issue, the Court of Appeal determined that counsel's decision to not object to the admission of the October 18 statements to police was a reasonable tactical decision. (Doc. No. 14-12 at 11.) The Court of Appeal reasoned that Petitioner's attorney did not object because "defense counsel believed it would be useful to have the jury hear the explanation for the Child's injuries offered by Raines in that interview. Indeed, in the [October 18] interview Raines provided a more plausible non-sexual explanation for the injuries than his previous claims that the Child was injured while falling off the bed or in the shower." (Id.)  As the Court of Appeal highlighted, at closing argument, Petitioner's counsel focused on Petitioner's October 18 statements, "arguing that Raines's explanation for the Child's injuries was

reasonable, and based on that explanation, although Raines may have committed child abuse as charged under count 2, he did not have the sexual intent necessary to support a finding of guilt on the lewd act count."  (Id.)

Here, Petitioner has not shown that his trial counsel's tactical decision to not object and use Petitioner's October 18 statements to provide "a more plausible non-sexual explanation for the injuries than his previous claims" was an unreasonable decision.  Because sexual intent is a necessary element of lewd conduct upon a child under Penal Code § 288(a), Petitioner's counsel's attempt to negate that element with Petitioner's October 18 statements to police was not objectively unreasonable.  See Penal Code § 288(a); (Doc. No. 14-12 at 11.)  Accordingly, Petitioner has not shown that his counsel was ineffective for not objecting to the admission of Petitioner's October 18 statements to police.  See Sexton v. Cozner, 679 F.3d 1150, 1160 (9th Cir. 2012) (stating that a reasonable tactical decision cannot form the basis of an ineffective assistance of counsel claim); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995) ("Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel.").

Moreover, Petitioner has not established that excluding his October 18 statements to police undermines confidence in the jury's verdict.  Strickland, 466 U.S. at 694.  At trial, the jury was presented with evidence of the extent and type of injuries to the Child, DNA evidence showing that the Child was a possible contributor to DNA found on Petitioner's genitals, Girl 1 and Girl 2's testimony that Petitioner sexually abused them when they were young, and testimony from a doctor trained in sexual assault injuries that the Child's injuries were consistent with injuries caused by a penis and inconsistent with injuries caused by accident or by fingers.  (Doc. No. 14-7 at 85-89, 92-93.)

In sum, Petitioner has not established that the Court of Appeal's denial of his ineffective assistance of counsel claims was contrary to or an unreasonable application of federal law.  28 U.S.C. § 2254(d).

14cv2961

**B.      Petitioner's Evidentiary Objections Do Not Establish Constitutional Errors**

**1.      Petitioner's October 18, 2010 Statements to Police**

Petitioner contends that the trial court erred by allowing into evidence Petitioner's October 18, 2010 statements to police. (Doc. No. 1-1 at 27.) Petitioner maintains that before beginning questioning on the morning of October 18, the police were required to re-advise Petitioner of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). (<u>Id.</u>)

The Ninth Circuit has "rejected a per se rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." <u>United States v. Rodriguez-Preciado</u>, 399 F.3d 1118, 1128 (9th Cir. 2005); <u>United States v. Andaverde</u>, 64 F.3d 1305, 1312 (9th Cir. 1995). "A rewarning is not required simply because there is a break in questioning." <u>Guam v. Dela Pena</u>, 72 F.3d 767, 769 (9th Cir. 1995). Instead, a court must examine the totality of the circumstances to determine whether police must re-advise a suspect of his rights after a break in questioning. <u>Rodriguez-Preciado</u>, 399 F.3d at 1128 (citing <u>Wyrick v. Fields</u>, 459 U.S. 42, 48-49 (1982)). The Ninth Circuit has upheld the admissibility of a defendant's statements where police advised the defendant of his rights, the defendant waived his rights, police began questioning the defendant, and police resumed questioning after an overnight break but did not re-advise the defendant of his rights. <u>Rodriguez-Preciado</u>, 399 F.3d at 1127 (upholding admissibility of statements made 16 hours after advice of rights); <u>Guam v. Dela Pena</u>, 72 F.3d 767, 770 (9th Cir. 1995) (upholding admissibility of statements made 15 hours after advice of rights); <u>Andaverde</u>, 64 F.3d at 1312 (upholding admissibility of statements made one day after advice of rights); <u>Puplampu v. United States</u>, 422 F.2d 870 (9th Cir. 1970) (upholding admissibility of statements made two days after advice of rights); <u>Maguire v. United States</u>, 396 F.2d 327, 331 (9th Cir. 1968) (upholding admissibility of statements made three days after advice of rights).

Here, the detectives advised Petitioner of his <u>Miranda</u> rights shortly before midnight on October 17, 2010 and Petitioner stated that he understood his rights and agreed to speak to the detectives. (Doc. Nos. 14-12 at 5; 14-3 at 66.) Petitioner did not assert his right to remain silent or to have counsel present during the interview on October 17 and he was not arrested after the interview. (<u>See</u> Doc. No. 14-3 at 58-114.) Approximately eight hours after waiving his rights, and six hours after the October 17 interview concluded, Petitioner returned to the police station at 8:00 a.m. on October 18, 2010 and agreed to take a polygraph examination. (Doc. Nos. 14-12 at 6; 1 at 23.) Petitioner has not pointed to any circumstances other than the passage of time that "suggest[s] the effectiveness of the earlier <u>Miranda</u> warning[] was diminished." <u>Rodriguez-Preciado</u>, 399 F.3d at 1129; <u>Dela Pena</u>, 72 F.3d at 770. Accordingly, under the totality of the circumstances, Petitioner has not established that his statements to police on October 18, 2010 were inadmissible. <u>Rodriguez-Preciado</u>, 399 F.3d at 1130 ("We hold that the failure to re-administer warnings on the second day does not automatically render any of the statements made that day inadmissible."); <u>Dela Pena</u>, 72 F.3d at 770.

Moreover, even if the trial court was required to exclude Petitioner's October 18 statements under <u>Miranda</u>, any failure to exclude was harmless error. Generally, habeas relief is appropriate only when a constitutional error was not harmless. <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2197 (2015). Habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 120-22 (2007) (holding <u>Brecht</u> harmless error standard applies on collateral review by federal habeas court where state appellate court failed to recognize the error and did not review it for harmlessness). "Under this test, relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Davis</u>, 135 S. Ct. at 2197-98 (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995)).

1    Here, Petitioner has not shown that admission of his October 18, 2010 statements

2  to police had a "substantial and injurious effect or influence in determining the jury's

3  verdict." Brecht, 507 U.S. at 637.   The jury rejected Petitioner's non-sexual

4  explanation for the child's injuries by finding him guilty of committing a lewd act upon

5  a child. (See Doc. No. 14-12 at 3.)  At trial, the jury was presented with, among other

6  evidence, Petitioner's inconsistent explanations to police on October 17, 2010,

7  evidence of the extent and type of injuries to the Child, DNA evidence showing that

8  the Child was a possible contributor to DNA found on Petitioner's genitals, Girl 1 and

9  Girl 2's testimony that Petitioner sexually abused them when they were young, and

10 testimony from a doctor trained in sexual assault injuries that the Child's injuries were

11 consistent with injuries caused by a penis and inconsistent with injuries caused by

12 accident or by fingers. (Doc. No. 14-7 at 85-89, 92-93.)  Accordingly, assuming the

13 trial court erred by admitting Petitioner's October 18, 2010 statements to police, the

14 error was harmless.  See Davis, 135 S. Ct. at 2197-98.

15   Additionally, the California Court of Appeal denied Petitioner's Miranda claim

16 regarding the October 18 interview statements because Petitioner failed to object to the

17 admission of the statements at trial. (Doc. No. 14-12 at 8-9.)  The court ruled that

18 under California Evidence Code § 353(a), Petitioner's failure to object to the admission

19 of the interview statements prohibited Petitioner from raising such an argument on

20 appeal. (Id. at 9) ("Here, Raines made no objection at trial to the admission of his

21 statements during the [October 18] interview.  Accordingly, Raines may not pursue an

22 appeal based on the contention that the statements he made during the . . . interview

23 were erroneously admitted into evidence in violation of Miranda.").  Here, Petitioner

24 has failed to establish that the Court of Appeal's denial of his Miranda claim was

25 contrary to or an unreasonable application of federal law.  Nunnemaker, 501 U.S. at

26 806; Fairbank v. Ayers, 650 F.3d 1243, 1256 (9th Cir. 2011).

27 ///

28 ///

### 2.    Propensity Evidence

Petitioner contends that the trial court erred by admitting testimony from Girl No. 1, Girl No. 2, and the girls' mother as propensity evidence pursuant to California Evidence Code § 1108 and § 352[1]. (Doc. No. 1 at 6.)  But, the improper admission of evidence under California state law "is not part of a federal court's habeas review of a state conviction." Estelle v. McGuire, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id.  Accordingly, a state court's evidentiary ruling may only be addressed in a federal habeas action if admission of the evidence violated a specific constitutional guarantee or if the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).

To establish a due process violation, a federal habeas petitioner must show that the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); see McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir. 1993) (stating that even where evidence was erroneously admitted, due process is violated only if "the erroneously admitted evidence was of such quality as necessarily prevents a fair trial" and that the evidence actually prevented a fair trial).  Further, the admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the evidence. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

On direct appeal, Petitioner contended that California Evidence Code § 1108 violated due process and that the trial court erred by not excluding the girls' and their mother's testimony as unduly prejudicial evidence under California Evidence Code

---

[1] California Evidence Code § 1108 provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code § 352 allows the trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice."

§ 352.  (Doc. No. 14-12 at 13, 15.)   The Court of Appeal rejected Petitioner's arguments, holding that the California Supreme Court has confirmed the constitutionality of § 1108 and that "[g]iven the highly probative nature of the girls' testimony, the trial court was well within its discretion to decide that any prejudice . . . was outweighed by the probative value of the evidence." (Id. at 14, 19) (citing People v. Falsetta, 21 Cal. 4th 903, 916 (1999)).   Petitioner then raised the same challenges to the testimony regarding prior sexual misconduct in a habeas petition to the Court of Appeal.  (See Doc. No. 14-20.)  The court denied the petition, reasoning that it had rejected the same arguments on direct appeal and Petitioner did not raise new law or facts to warrant reconsideration of the denial.  (Id.)

Here, Petitioner has not carried the "heavy burden" to show admission of the testimony regarding prior sexual misconduct rendered the trial unfair. Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), amended on reh'g, 421 F.3d 1154 (9th Cir. 2005). As the Court of Appeal determined, "the incidents involving Girl No. 1 and Girl No. 2 were both very similar to the incident involving the Child in that they both involved intentional sexual conduct with very young girls" and the Child's injuries were similar to Girl No. 2's injuries. (Doc. No. 14-2 at 17.)  The court concluded that "the evidence of Raines's molestation of Girl No. 1 and Girl No. 2 was highly probative" of whether Petitioner "injured the Child with his fingers after losing his temper or injured her when he had sexual intercourse with her."  (Id.)  Because the girls' testimony supports the permissible inference that Petitioner had the requisite sexual intent when he injured the Child, the admission of the testimony did not violate Petitioner's due process rights. Jammal, 926 F.2d at 920 ("Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process."); see United States v. Lemay, 260 F.3d 1018, 1024-27 (9th Cir. 2001) (holding that the federal rule permitting admission of similar uncharged conduct in child molestation cases does not violate due process where the evidence is relevant and not unduly prejudicial); Mejia v. Garcia, 534 F.3d 1036, 1046 (2008).  Accordingly, Petitioner has not shown that

admission of the testimony regarding his prior sexual misconduct violated due process or was contrary to clearly established federal law.  <u>Mejia</u>, 534 F.3d at 1046;  <u>Lemay</u>, 260 F.3d at 1024-27.

<u>**Conclusion**</u>

For the reasons stated above, the Court denies Petitioner's petition for habeas corpus.  Additionally, the Court denies a certificate of appealability.

**IT IS SO ORDERED**.

DATED: September 9, 2015

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

- 20 -

14cv2961